IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| **BIJU DENNIS** ) | |
| ) | |
| Plaintiff, ) | |
| **v.** ) | Civil Action No:1:12cv541 |
| ) | |
| **BANK OF AMERICA, N.A.** ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION TO COMPEL**

Plaintiff Biju Dennis, by counsel, files memorandum in support his motion to compel full and complete responses to discovery and states as follows:

**I.      STATEMENT OF THE CASE**

This case is based upon Bank of America's (BANA) violation of the Fair Credit Reporting at 15 U.S.C. §1681s-2(b) involving furnisher duties to conduct a reasonable investigation of a credit reporting dispute and properly report the results of the dispute after receiving notice of the dispute from a credit reporting agency.  In these cases, the critical facts for discovery center upon the actions of the dispute processors after they received notice of the dispute from the credit reporting agencies as well as the procedures that the furnisher implemented in order to assure a reasonable investigation of the credit reporting dispute.  The documents reviewed, actions taken during the review, results reported to the credit reporting agency, and the procedures used by the furnisher determine the level of culpability and are exclusively within the knowledge of the defendant.

In this particular case, BANA received five different notices or "ACDVs" (automated consumer dispute verification forms) from the credit reporting agencies that triggered BANA's

1

obligations under 15 U.S.C. §1681s-2(b). Plaintiff knows the names of the individuals that responded on behalf of BANA, Mangalarmpeta Shaleeni and Silva Kumar Kancharla, but Plaintiff does not know what actions they took after receiving the ACDVs. Moreover, these employees are believed to be based in India, so Plaintiff does not know if they were employed directly by BANA, are still employed by BANA, or reasonable available for deposition in this case. Accordingly, Plaintiff issued interrogatory and document requests to ascertain the witnesses with knowledge, what they know, the documents they used as part of their investigation, the training that they received, and the procedures that BANA employed to comply with the FCRA. Plaintiff issued the interrogatories and document requests on August 3, 2012, and at the time of filing this motion two months later, BANA has failed to provide proper discovery responses or provide documents that have been requested.

On August 21, 2012, BANA noted its initial objections to the discovery that were general and boilerplate objections that are not favored in this court. Plaintiff's counsel conducted a meet and confer conference regarding the objections, and BANA agreed to remove some of the objections and provide responses to the discovery. When the time came for BANA to actually respond the discovery on September 5, 2012, BANA requested additional time to respond and produce the documents. Based upon Plaintiff's counsel's experience with BANA from other cases, Plaintiff desired the protection of a consent order that would establish a date certain for BANA to respond to the discovery requests. Accordingly, the consent motion was filed and the parties presented the motion to the court at docket entry 14 with an order that stipulated that BANA would provide full and complete responses to the interrogatories and document requests on or before September 14, 2012.

On September 14, 2012, BANA sent interrogatory responses, document responses, and a disk of 800 bates labeled documents to Plaintiff via Federal Express for delivery on September 17, 2012. Attached to this memorandum in support of the Plaintiff's motion to compel are BANA's responses to interrogatories (Exhibit "A") and responses to document requests (Exhibit "B"). BANA's responses were totally deficient and in no manner full and complete as contemplated by the order that the parties agreed upon and submitted to the court. As will be discussed herein, BANA made no effort to identify the facts known by the ACDV processors, did not identify their training, and did not identify or produce any of the procedures for FCRA compliance. In addition, the documents were produced as a document dump of 800 plus documents with no identification in the responses as to which documents were responsive to the document requests. In addition, the document dump was a thinly veiled attempt to produce a lot of meaningless documents to obscure the fact that BANA failed to produce the critical documents in this case. Many of the documents produced concerned the underlying real estate loan that was resolved by settlement in the prior case and no longer relevant in this dispute. Once again Plaintiff engaged in the meet and confer process on September 24, 2012, and BANA agreed to produce supplemental responses by the following Friday September 28, 2012. BANA did not provide supplemental response in accordance with its agreement. Thereafter, Plaintiff inquired when BANA would provide supplemental responses, and BANA failed to provide a date certain for the responses this week. At this juncture, Plaintiff has engaged in many meet and confer conferences, received a consent order for full and complete response that was not honored, and still does not have verified, full, complete, and proper responses to discovery. At this juncture, Plaintiff has no choice, but to move for an order to compel and/or sanctions against BANA based upon its behavior thus far in discovery.

I. **INTERROGATORY RESPONSES 1, 8, 9, 10, 11, 12, AND 19 DEMONSTRATE HOW BANA HAS MADE NO EFFORT TO PROVIDE PROPER RESPONSES TO THE FACTS SUPPORTING BANA'S DEFENSE THAT IT CONDUCTED A REASONABLE INVESTIGATION PURSUANT TO 15 U.S.C. §1681s-2(b).**

Plaintiff's interrogatory number one is the most basic of interrogatories that requests that BANA identify contact information as well as the subject matter of the information for individuals with knowledge of the facts of this case. In response, to this interrogatory, BANA identified the ACDV processors, Mangalarmpeta Shaleeni and Silva Kumar Kancharla, but only stated that the processors had "general knowledge regarding Defendant's response to Plaintiff's credit dispute" and thereafter identified their contact information as through counsel. When reviewing the other responses to interrogatories regarding what these processors did as part of their investigation of the ACDVs it is clear that no one has actually spoken to these individuals to see what they know about this case.

Interrogatories 8 through 12 specifically ask what actions were taken by the processors as part of the investigations after receiving the ACDVs. The last sentence of the interrogatories specifically place BANA on notice that Plaintiff wants to know, "Specifically, what we are seeking here is exactly what your ACDV processors did, what documents they examined and an explanation as to how they failed to discover that the case had been settled and that one of the terms of that settlement was to delete the trade line." BANA made no effort to answer these requests and could not have spoken to any witness identified in interrogatory number 1 as the response was a general response as to what would have been done and in fact all of the responses include the statement, "Upon information and belief, the ACDV processor who reviewed the relevant information on or about June 23, 2011 followed this procedure…" Clearly, BANA has no idea what, if anything, that the processors actually did after receiving the ACDVs from the credit reporting agencies. In none of the responses to interrogatories 8 through 12 did BANA

4

come forward with any facts as to what actually transpired or what the witness actually did in order to respond to the ACDV. Given the response to interrogatory one in which no facts are identified as to what subjects of information the witnesses knew, BANA is merely speculating about what it believes transpired. After having the discovery requests for two months and receiving an extension allowing it to more fully respond, it is shocking that BANA cannot come forward with any facts to support its denials and defenses. If BANA will not come forward with a proper identification of facts, Plaintiff requests that the court sanction them by deeming the facts alleged in the Complaint established and by striking their defenses that they conducted a reasonable investigation. Interrogatory number 19 is intended to reveal exactly what efforts were made to investigate the responses to interrogatories and what witnesses assisted in that process. In this case, the only two individuals identified were the lawyers, thereby proving that no witnesses in the case have been contacted or participated in preparing the answers. Perhaps even more telling is that fact that no BANA employee has stepped forward to verify these answers and they remain unverified to this day. Accordingly, Plaintiff requests that the court compel full and complete responses to interrogatories 1, 8, 9, 10, 11, and 12 within five days of the Court's order or otherwise implement sanctions against BANA for failing to participate.

## II. BANA HAS FILED NON-RESPONSIVE AND EVASIVE ANSWERS TO INTERROGATORIES 2, 3, 4, 5, 6, and 7.

Interrogatories two (2) through seven (7) range in topics that are related to BANA's affirmative defenses to the case, and BANA has provided responses to all of the interrogatories that are evasive and non responsive. Interrogatory number two was designed to establish the basic point that Mr. Dennis could not have been late on any payment or money owed after the settlement agreement that he entered into to resolve the state court case since the outstanding debt was resolved as part of the settlement. In response, BANA not only will not admit to this

basic contention, but attempts to argue that the account was somehow past due because no payment was made 150 days after the settlement agreement entered into by the parties. Once a debt is compromised and settled in full no further payments are made, nor are they due. No facts, witness, or documents are identified in the response to support the position that somehow Mr. Dennis was supposed to make further payments after the settlement, and it is simply an evasive and non-responsive answer to the interrogatory.

Interrogatory number three (3) requested that BANA identify any facts to support an argument that the Plaintiff or any third party made an error or mistake that would cause the Plaintiff's damages. After asserting an improper and boilerplate objection that should be stricken, BANA failed to respond with any facts, witnesses, or documents to support the contention. Moreover, baseless and unsupported statements were made "upon information and belief" like an assertion that the CRAs may not have acted in a timely manner. If this is a factual issue in dispute that needs to be resolved, Plaintiff needs to discover what facts, documents and witnesses will support the defendant's position and BANA has failed to identify any. Defendant seeks to avoid conceding that it has no facts to support such positions, by generally stating that based upon information and belief there may be something out there. However, it has had two months to locate such facts, documents and witnesses and it still has nothing. As with the other answers, BANA is completely non-responsive and should be compelled to note full and complete responses or be sanctioned.

Interrogatory number four (4) requested that BANA acknowledge or admit that it made any mistakes regarding the credit reporting for the account at issue in this litigation. This interrogatory is intended to clarify the defendant's position at trial concerning whether or not the violations were negligent or willful. If the defendant intends to present a mea culpa defense to

avoid a finding of a willful violation, the Plaintiff is entitled to know that in preparation for trial. Once again, BANA asserts an improper objection and fails to answer the interrogatory tendered because the response only generally identifies when it responded to ACDVs and does not identify what mistake or errors, if any, that it made in handling the credit reporting for the account. This issue is critical for establishing a firm target for trial as Plaintiff does not want to deal with acknowledgements on the day of trial that any actions were inadvertent "mistakes," BANA should be forced to answer the question that it either intended its actions and no mistakes were made or identify the mistakes that it made in response to this interrogatory.

Interrogatory five (5) requests an answer as to why BANA never deleted the trade line from Plaintiff's credit report as it was required including witnesses, facts, and documents, supporting why the account was not deleted. This is such a basic element of the case that it needs to be clearly resolved prior to trial. Yet again, Plaintiff received an improper objection and evasive response that inaccurately answers the question. If this defendant wants to defend the case on the grounds that it deleted the trade line after suit was filed, it needs to explain why it waited so long and failed to do so until after it was served with a federal Complaint. Plaintiff requests that the court strike the objection and compel a full and complete response.

Interrogatory six (6) requests an identification of the training the ACDV processors received for compliance with the FCRA including training content, timing, duration, and the persons involved with the training. There is also an accompanying document production request for the training materials that are identified in the interrogatory. There is a needless objection that "training can take different forms" which is totally irrelevant because the question specifically asks for the training related to FCRA compliance. Once again, there is general assertion that training exists with no facts supporting how the ACDV processors in this case

were trained or what the training was. Defendant clearly has not contacted these processors and is merely guessing as to how they were trained to prevent the Plaintiff from proving that they were either inadequately trained or, as we have seen in other furnisher cases, trained to process ACDVs in a totally different manner than the training manual directs. Plaintiff again requests that the court strike the objection and compel a full and complete response to this interrogatory.

Interrogatory seven (7) is a critical question regarding the procedures maintained by BANA for FCRA compliance. BANA totally fails to answer the question and inserts an improper objection that somehow it is unduly burdensome to identify its FCRA procedures for credit reporting investigations when those procedures and whether the procedures were followed are the central issues in the case. Shockingly and disturbingly, BANA also failed to produce its procedures despite it false assertion to the contrary in response to document request number seven. Two months into discovery, BANA will not identify or produce its procedures for FCRA compliance, which is one of the most brazen and shocking moves that has occurred in any FCRA case that this firm has litigated. Moreover, unless and until the ACDV processors have been interviewed or contacted, any statement as to what they do or were trained to do is misleading at best. In a recent case before this court, the outsourced ACDV processors readily admitted that they were trained to process ACDVs one way even though the manual dictated that they do it another way. One of them openly admitted that they pay no attention to the basis of the consumer's complaint in the ACDV since they are not going to investigate that anyway. Any review of the discovery responses easily leads to the conclusion that BANA has made no effort to participate in discovery, is making unsupported statements about how these individuals were trained and is stonewalling the Plaintiff.

**III.    INTERROGATORIES 13, 14, and 15 REVEAL THAT BANA IS HIDING THE EMPLOYMENT STATUS OF THE ACDV PROCESSORS,**

Interrogatories 13, 14, and 15 are designed to discover the relationship between the ACDV processors who are located in India and BANA. In other cases, Plaintiff believes that BANA has asserted that the outsourced Indian ACDV processors are not employees of BANA, cannot be deposed, and must be deposed through the outsourcing company. In its discovery responses, BANA wants to hide the employment status of the ACDV processors by stating that they can be contacted through counsel and thereafter in interrogatory responses only state that they were employed in 2011 with no information as to whether they are still employed or what the actual contact information is for the employees. By reading the responses to interrogatories 1, 13, 14, and 15, it is impossible to arrange for depositions of these critical witnesses and we have no reliable information concerning what they know, how they were trained or what they did in this case. Plaintiff requests compelled and proper responses to interrogatories 13, 14, and 15.

**IV.    BANA HAS A DUTY TO ANSWER THE INTERROGATORY REGARDING NET WORTH INFORMATION IN INTERROGATORY NUMBER 17.**

This court routinely requires Defendant to answer questions related to their net worth in cases involving claims for punitive damages. BANA's objection and response is improper because they are required to answer the question so that Plaintiff has a stationary target for trial. Accordingly, Plaintiff requests that the court strike the objection to interrogatory 17 and require a proper response to the interrogatory so that there is no dispute at trial as to BANA's net worth when Plaintiff argues his case to a jury.

V. **BANA'S DOCUMENT RESPONSE IS COMPLETELY IMPROPER, MISLEADING AND COULD NOT BE FULLY RESPONSIVE BASED UPON ITS GENERAL FAILURE THUS FAR TO PARTICIPATE IN DISCOVERY.**

BANA has not identified in one single document request which specific documents are responsive to the request tendered. For certain document requests this is vital information, such as document requests 11 through 13 and 18 through 25 as these document requests dovetail with the interrogatories by requesting identification of the specific documents that the ACDV processors reviewed as part of their FCRA investigation. There is no proper objection to these requests, the documents have not been identified, and the interrogatories reveal that BANA did not even consult the individuals to determine what documents could have been or were reviewed. It is nothing more than an 800 page document dump requiring the Plaintiff to guess which documents are responsive to each request. Plaintiff requests the court compel proper responses as well as full and complete document production of all responsive documents.

As discussed in the section regarding the interrogatories, BANA has brazenly refused to produce it policies and procedures related to credit reporting and credit reporting investigations in document request number 7. Moreover, the response falsely states, after an improper objection, to "please see documents produced." After review of the 800 page document dump, no documents related to policy or procedures were produced. This is an unconscionable response to represent that responsive documents are hidden in those 800 pages somewhere when they know that they are not in there. Plaintiff requests that the objection be stricken and that they be ordered to immediately produce and identify the documents responsive to each portion of the request or significant sanctions.

Given the policies and procedures of the credit reporting agencies regarding notification related to the investigation and deletion of trade lines, BANA could not have properly responded

to document requests two (2) through six (6) as documents that normally would be produced in such cases have not been produced by BANA. Plaintiff believes that this is also part of the general failure of BANA to participate in discovery.

Plaintiff's document requests twenty-nine (29) through thirty-three (33) also deal with the training, employment, production and compensation issues related to the outsourced Indian ACDV processors. In almost every case against a furnisher, without exception, the evidence is that they process 50-60 ACDVs per hour and spend no time investigating any of the consumer's issues. All they do is cut and paste the information in their computer to the response side of the ACDV and verify the account data. These requests go to the punitive damages element of the case that in order to save money and reduce costs they outsource these investigations to foreign workers who will process disputes for $.50 or less per transaction. These big companies know how much a financial burden it is to respond to consumer disputes and their accounting department knows what they are paying. The knee-jerk reaction we routinely receive to such requests is that the information is not available, but we never receive any identification of the individuals in the accounting department that will testify that such costs are a total mystery. Request 29 asks for the employment folders including performance reviews for Mangalarmpeta Shaleeni and Silva Kumar Kancharla, BANA response was particularly evasive as in the document response, BANA referred to these individuals as "non-party employees." Defendant cannot have it both ways, by preventing direct contact with these individuals and not disclosing their contact information and limiting contact through counsel only (See response to Interrogatory No. 1), and then objecting on the grounds that they are non-party employees. Only full responses to interrogatories and production of the documents requested in the number 29 will reveal the true nature of the employment status.

Requests thirty (30) through thirty-three (33) are intended to discover a few critical facts: how many ACDVs these individuals process in an hour or some other period that can be reduced to the per hour rate and how much they are paid so that we can reduce that to the per dispute cost. Every ACDV processor we have deposed knows how many they process, on average, per hour and that number is typically around 50. Not surprisingly, all of these companies that report to the CRAs and have a duty to respond to consumer disputes seem to process them in the exact same manner. They know full well that they are not conducting any sort of reasonable investigation and do not want to expose the truth about how many they process per hour or how much they pay per transaction, but this information is known or easily identified. This defendant needs to contact the accounting office and ask them what this number is and they will receive and answer. In the alternative, they need to identify a senior person in the accounting department that is in charge of keeping track of the costs of the ACDV processing and we can depose them for the information.

Plaintiff reserves the right to bring additional document requests to the attention of the court as the general document dump renders it difficult to ascertain which documents are responsive to each request.

## VI.    CONCLUSION

This defendant is a large bank that has shipped its ACDV processing to India to save money which is clearly the trend in the industry. However, it needs to accept the burdens of such a move and take whatever efforts are necessary to contact these processors and ascertain exactly what they did, how they were trained and discover why they failed to delete the trade line after they were put on notice that the case had been settled and the trade line was to be deleted. Instead of confronting these basic facts, Defendant has pursued a path of delay, denial, and non-

disclosure so that it can avoid admitting to facts that cannot reasonably be denied. Plaintiff recognized the difficulties that opposing counsel would face trying to track down such information and agreed to an extension of time to allow full and complete responses. However, what we received was anything but that and based upon the response to Interrogatory No. 19 the only individuals involved in answering these requests were the lawyers here in the United States. Accordingly Plaintiff requests the following relief:

1) Initially, Plaintiff requests the court to enter the agreed order that the parties submitted as part of the motion to grant additional time to respond as it does not appear that order has been entered;

2) Plaintiff requests a second order compelling the defendant to provide full and complete responses to plaintiff's interrogatories 1 thru 15, 17 and 18 without objection no later than October 19, 2012;

3) Plaintiff also requests entry of an order compelling the defendant to provide full and complete responses to Plaintiff's Requests for Production of Documents no later than October 19, 2012 that specifically identifies by bates number all responsive documents to each request and strikes all objections to Requests 2-7; 11-13; 18-25; and 29-33.

4) All such further relief that this court deems just and proper.

Respectfully submitted,
BIJU DENNIS

/s/
A. Hugo Blankingship, III, Esquire (VSB # 26424)
Blankingship & Christiano, P.C.
11790 Sunrise Valley Dr., Suite 103
Reston, Virginia 20191
(571) 313-0412 (telephone)
(571) 313-0582 (facsimile)
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of October, 2012, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) to the following:

C. Paige Bobick (VSB No. 75599)
MCGUIREWOODS, LLP
Court Square Building
310 4th Street NE, Suite 300
Charlottesville, VA 22902-1288
Tele: (434) 977.2593
Fax: (434) 980.2273
pbobick@mcguirewoods.com
*Attorney for Defendant*

/s/
A. Hugo Blankingship, III, Esquire (VSB #26424)
Blankingship & Christiano, P.C.
11790 Sunrise Valley Dr., Suite 103
Reston, Virginia 20191
(571) 313-0412 (telephone)
(571) 313-0582 (facsimile)
*Counsel for Plaintiff*